IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ALLEN RAY KEETON,

    **Plaintiff,**

v.                                                         Civil Action No. 3:22cv723

J.J. SHUPP, *et al.*,

    **Defendants.**

## MEMORANDUM OPINION

Allen Ray Keeton, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1] The matter is before the Court on Mr. Keeton's Motion for Leave to File an Amended Supplemental Particularized Complaint. (ECF No. 37.) For the reasons that follow, the Motion for Leave to File an Amended Supplemental Particularized Complaint, (ECF No. 37), will be GRANTED and the claims against Defendant Guthrie will be DISMISSED.[2]

### I. Procedural History

In his Original Complaint, (ECF No. 4), Mr. Keeton named Chesterfield County Police Officer J. Shupp as the sole defendant. By Memorandum Order entered on April 13, 2023, the

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the capitalization, punctuation, and spelling in the quotations from the parties' submissions.

Court noted that Mr. Keeton's allegations failed to provide each Defendant Shupp with fair notice of the facts and law upon which his liability rests. (ECF No. 11.) Accordingly, the Court directed Mr. Keeton to file a particularized complaint. (ECF No. 11.) Thereafter, Mr. Keeton filed his Particularized Complaint naming J.J. Shupp and Officer Addison Guthrie as Defendants and served the same upon Defendants. (ECF Nos. 12, 16.)

On December 28, 2023, Defendant Guthrie filed a Motion to Dismiss with respect to the Particularized Complaint. (ECF No. 19.) Mr. Keeton filed a Motion for Leave to File Amended Supplemental Particularized Complaint. (ECF No. 29.) By Memorandum Order entered on April 22, 2024, the Court denied Mr. Keeton's Motion for Leave to File Amended Supplemental Particularized Complaint because Mr. Keeton failed to submit a copy of his proposed amended complaint. (ECF No. 36, at 1.) The Court further informed Mr. Keeton:

> Any proposed amended complaint must be filed within twenty (20) days of the date of entry hereof. A proposed amended complaint must set forth legibly, in separately numbered paragraphs, a short statement of the facts giving rise to each claim against each defendant. Plaintiff must also state what civil rights he believes each defendant violated and explicitly state how said defendant's actions violated each constitutional right. Any amended complaint will supplant his current complaint and all prior submissions. The amended complaint must stand or fall of its own accord and contain a prayer for relief. Plaintiff may not incorporate other submissions by reference.

(ECF No. 36, at 1–2.)

On June 3, 2024, Mr. Keeton filed a Motion for Leave to File an Amended Supplemental Particularized Complaint, (ECF No. 37), along with a copy of his Proposed Amended Supplemental Particularized Complaint (the "Second Particularized Complaint"), (ECF No. 37-1). Defendant Guthrie has opposed the Motion for Leave to File an Amended Supplemental Particularized Complaint. (ECF No. 38.)

The Second Particularized Complaint provides additional facts and further clarifies Mr. Keeton's claims. "The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Accordingly, the Motion for Leave to File an Amended Supplemental Particularized Complaint, (ECF No. 37), will be GRANTED. Nevertheless, for the reasons set forth below, all claims against Defendant Guthrie will be DISMISSED.

## II. Standard for a Motion to Dismiss

Pursuant to the Prison Litigation Reform Act ("PLRA") this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A. The first standard includes claims based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless." *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)), *aff'd*, 36 F.3d 1091 (4th Cir. 1994). The second standard is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more

than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it will not act as the inmate's advocate and develop, *sua sponte*, statutory and constitutional claims that the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. Pertinent Allegations in the Second Particularized Complaint

Mr. Keeton provided the following narrative of the relevant events:

I, Allen Ray Keeton on, October 13th, approximately 12:30 am was sitting in my vehicle on private property on the grass under curtilage of the trees at 10216 Ronaldton Rd. Chesterfield Va, 23236, **when Officer Guthrie, a Chesterfield Police officer, pulls up in a marked car on the public road and Plaintiff is parked on the grass on private property. At this time Plaintiff was putting his private things into his backpack all what the Health Brigades had supplied him with legally.** Officer Guthrie yells in the direction of the vehicle, Allen Ray Keeton stick your hands out the window you're under arrest, standing sideways with his hand on his firearm approaching. Plaintiff complied put his hands out the window immediately stopping, reaching into his backpack, for safety reasons because of Officer Guthrie's alarming body language, while Officer Guthrie approached the vehicle from behind with no proper identification process, could not visibly see Plaintiff and without knowledge of who was sitting in the vehicle, only assuming Plaintiff was in the vehicle. At this time, Plaintiff's hands [were] out the window, another officer J.J. Shupp pulls up while Officer Guthrie is putting one hand cuff on Plaintiff, J.J. Shupp makes the positive identification on Plaintiff while looking into the window while Officer Guthrie is holding Plaintiff's hands out the window with one cuff on.

Plaintiff is arrested and walked with Officer Guthrie to the front of his patrol car. At this time Officer J.J. Shupp says "he's got stuff." While Plaintiff is standing with Officer Guthrie, J.J. Shupp is back and forth to Plaintiff's vehicle repeatedly shining and looking into the vehicle by J.J. Shupp standing from the road while vehicle is parked in the grass alongside the road on the property. Officer J.J. Shupp after the extended back and forth to Plaintiff's vehicle. There was conversation between both officers who would search, they decide Shupp would search based off the sight of what J.J. Shupp calls heroin syringes without residue. J.J. Shupp opens the front driver door and Plaintiff says to J.J. Shupp "why are you searching my vehicle you can't search my vehicle you need a warrant." J.J. Shupp replies because you have heroin syringes in your seat (states nothing about a baggy). Then continued the search of the vehicle all compartments and trunk. J.J. Shupp emptied the contents of the backpack on the trunk of Plaintiff's vehicle in case was Narcan and clean syringes that the anonymous program Health Brigades supplied Plaintiff with he is legally enrolled in. At this time Plaintiff's mother Annette Marie Kearns came out of the house and stood next to the vehicle and asked Plaintiff "Allen are those your syringes?" Plaintiff answered yes. At this time, Plaintiff was put into the patrol car and watched Officer J.J. Shupp continue the search, **then officer Guthrie joins the search assisting with his flashlight, on the private property and combing through the yard on the property without a warrant. Searching for evidence that a crime was committed. The items seized were taken from their private places and put out in public view in this case Plaintiff's mother**

5

witnessed. These two officer's violated my 4th Amendment[3] right to my privacy without probable cause, are any law broken this was not a traffic stop, Officer Guthrie initiated this interaction by abuse of authority and infringing himself on Plaintiff while in his vehicle while on private property without positively identifying Plaintiff, forcing Plaintiff to stick his hands out the window stopping Plaintiff from being secure in the privacy of his car and on his property, without any means of a[n] identification process, at this time Plaintiff was securing all what the anonymous program supplied him with was moving items from console to his backpack when Officer Guthrie presented his hand on his firearm on his side in an alarming way, yelling Allen Keeton stick your hands out the window your under arrest. Plaintiff could see only though the side view mirror looking back because Officer Guthrie was from coming up from behind the vehicle. Guthrie has never encountered Plaintiff and this officer has never been to Plaintiff's address, but only on a request call from J.J. Shupp to Officer Guthrie to dispatch to the address. J.J. Shupp was not at the address when Guthrie got to the address.

    The precursor to this encounter started with J.J. Shupp driving down the road approximately one mile from address and got behind Plaintiff's vehicle ran a routine license plate check, at this time J.J. Shupp testified that the car made a left-hand turn, and the vehicle made no traffic infractions there was no need to follow. Shupp testified that there was a delay on the information on vehicle to come back and when it did it said the owner of the car had active warrants. Shupp testified he only knew that there was one occupant in the vehicle, the driver, and could not see who was driving. This is when Shupp dispatches the assistance of Officer Guthrie to Plaintiff's address, Shupp drove around the neighborhood looking for the vehicle while Guthrie pulled up to the address first. Then all the above matters occurred. This encounter is two-fold and dove tails into one another from these two officers.

. . .

    While Plaintiff is standing with Officer Guthrie while Shupp searches the vehicle on the property Guthrie is asking Plaintiff repeatedly for his SSN, Plaintiff tells Guthrie he not completely sure he might have the last numbers mixed up that he was not going to try, Officer Guthrie is persisting for Plaintiff to try, Plaintiff leans forward right into Guthrie's body cam and states this officer will not stop asking me to give him a SSN, so he can put more charges on me for ID theft. After a few moments after the harassment Guthrie says just try. Plaintiff then tries, immediately Guthrie comes back and says now I'm charging you with ID theft. J.J. Shupp overhears this statement and comes over to Guthrie and states "hey you can't get him for that, but I can for what he said when got out the vehicle. Plaintiff

---

[3] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV.

immediately states all I said is I have a brother named Allen, never stated I was anyone else." Plaintiff is now on way with J.J. Shupp to Chesterfield County Jail were Shupp swears in on a criminal complaint on Plaintiff for 2 counts possession schedule I/II, paraphernalia, ID theft. Magistrate ask Shupp what was the probable cause to search Mr. Keeton's vehicle, Officer J.J. Shupp states he seen a baggy with brown heroin like substance and a syringe without residue in Plaintiff's driver seat. Plaintiff was in court a few months later at preliminary hearing and tells his attorney he wants to move forward with the pre-lim, and wants to show the judge the body cam footage for the incident with the Guthrie. Attorney then goes and speaks to Commonwealth and the charge ID theft was dismissed. Plaintiff feels that this Honorable Court should be aware of these facts highlighting the behaviors of these two officers.

Plaintiff's attorney proved there was no baggy in the Plaintiff's seat only a syringe without residue was in plain view and he needed a warrant to search. Plaintiff believes that this was a malicious intent and ill will to cover the threshold for probable cause to search the vehicle on private property, Officer Shupp swore under oath to magistrate that there was a baggy he seen in plain view. Plaintiff believes this was calculated and has caused Plaintiff a lot of damages punitively, Plaintiff's belief is that there should be compensatory damages awarded to persuade these officers to uphold the Constitution, and the oath they swore to, and not to put the Commonwealth at risk of any future civil matters.

(ECF No. 37-1, at 1–4 (emphasis added).)

Mr. Keeton contends that Defendant Guthrie's action in the two emphasized sections above violated his rights under the Fourth Amendment. (ECF No. 37-1, at 5.) As best as the Court can discern, Mr. Keeton raises the following claims against Defendant Guthrie:

| | |
|---|---|
| Claim One | Defendant Guthrie violated Mr. Keeton's right under the Fourth Amendment when he arrested Mr. Keeton "in his vehicle while on private property without positively identifying Plaintiff, forcing Plaintiff to stick his hands out the window stopping Plaintiff from being secure in the privacy of his car and on his property, without any means of a[n] identification process . . . ." (ECF No. 37-1, at 2.) |
| Claim Two | Defendant Guthrie violated Mr. Keeton's rights under the Fourth Amendment by shining his flashlight into Mr. Keeton's car and into the grass around Mr. Keeton's car. (ECF No. 37-1, at 2.) |

7

## III. ANALYSIS

"[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603 (1980). Therefore, it is equally apparent that a valid arrest warrant, authorizes an officer to enter the curtilage of an individual's property where there is reason to believe that the subject of the warrant may be found there. *See, e.g.*, *United States v. Green*, --- F.4th ----, No. 19-4348, 2024 WL 3262980, at *7 (4th Cir. July 2, 2024) (concluding that arrest warrant authorized police to enter property an arrest defendant who they observed in the yard (citing *Payton*, 445 U.S. at 602–03; *United States v. Hill*, 649 F.3d 258, 262-65 (4th Cir. 2011))); *United States v. Cozart*, No. 3:19-CR-123-RLJ-HBG, 2022 WL 1521511, at *10 (E.D. Tenn. Jan. 24, 2022), *report and recommendation adopted*, No. 3:19-CR-123, 2022 WL 1117103 (E.D. Tenn. Apr. 14, 2022). Here, Defendant Guthrie had access to active warrant for the arrest of Mr. Keeton, and he had every reason to believe Mr. Keeton could be found in the vehicle parked in the curtilage because Defendant Guthrie knew that vehicle was registered to Mr. Keeton. Further, Defendant Guthrie confirmed that Mr. Keeton was the occupant of the vehicle when he yelled for Mr. Keeton by name and told him to stick his arms out the window because he was under arrest and Mr. Keeton complied. Accordingly, Mr. Keeton fails to state a valid Fourth Amendment claim against Defendant Guthrie. Claim One will be DISMISSED.

Next, in Claim Two, Mr. Keeton contends that Defendant Guthrie violated his right to be from an unreasonable search when he shined his flashlight into Mr. Keeton's car and into the grass around Mr. Keeton's car. The Supreme Court, however, has held that shining a flashlight into a vehicle is not a search for Fourth Amendment purposes. *Texas v. Brown*, 460 U.S. 730,

739–40 (1983) (citations omitted) (concluding police officer's "action in shining his flashlight to illuminate the interior of [defendant's] car trenched upon no right secured to the latter by the Fourth Amendment. . . . the use of artificial means to illuminate a darkened area simply does not constitute a search, and thus triggers no Fourth Amendment protection."). Further, because the warrant provided Defendant Guthrie lawful authority to be on the property next to Mr. Keeton's car, his use of his flashlight to illuminate the yard near the car, does not constitute an unlawful search. *See id.*; *Green*, 2024 WL 3262980, at *7. Accordingly, Claim Two will be DISMISSED.

## IV. Conclusion

The Motion for Leave to File an Amended Supplemental Particularized Complaint, (ECF No. 37), will be GRANTED. The Second Particularized Complaint, (ECF No. 37-1), will be FILED and SUPPLANTS the prior complaints. All claims against Defendant Guthrie will be DISMISSED. Defendant Guthrie's Motion to Dismiss, (ECF No. 19), will be DENIED AS MOOT. Any party wishing to file a motion for summary judgment must do so within sixty (60) days of the date of entry hereof.

An appropriate Order will accompany this Memorandum Opinion.

Date: 8/9/2024
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge

9