IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ALLEN RAY KEETON,

    Plaintiff,

v.                                                           Civil Action No. 3:22cv723

J.J. SHUPP, *et al.*,

    Defendants.

## MEMORANDUM OPINION

Allen Ray Keeton ("Plaintiff," or "Mr. Keeton"), a former Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1] The action is proceeding on Mr. Keeton's Second Particularized Complaint. (ECF No. 37-1.)[2] By Memorandum Opinion and Order entered on August 9, 2024, the Court dismissed all claims against Defendant Guthrie. (ECF Nos. 39, 40.) The matter is before the Court on the Motion for Summary Judgment filed by Defendant Shupp. (ECF No. 41.) The Court and Defendant Shupp provided Mr. Keeton with

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the capitalization, punctuation, and spelling in the quotations from the parties' submissions.

*Roseboro* notice.³ (ECF No. 41, 43.) Mr. Keeton has responded. (ECF No. 48.) For the reasons that follow, the Motion for Summary Judgment (ECF No. 41) will be GRANTED.

### I. Pertinent Allegations in the Second Particularized Complaint

Mr. Keeton provided the following narrative of the relevant events:

> I, Allen Ray Keeton on, October 13th, approximately 12:30 am was sitting in my vehicle on private property on the grass under curtilage of the trees at 10216 Ronaldton Rd. Chesterfield Va, 23236, when Officer Guthrie, a Chesterfield Police officer, pulls up in a marked car on the public road and Plaintiff is parked on the grass on private property. At this time Plaintiff was putting his private things into his backpack all what the Health Brigades had supplied him with legally. Officer Guthrie yells in the direction of the vehicle, Allen Ray Keeton stick your hands out the window you're under arrest, standing sideways with his hand on his firearm approaching. Plaintiff complied put his hands out the window immediately stopping, reaching into his backpack, for safety reasons because of Officer Guthrie's alarming body language, while Officer Guthrie approached the vehicle from behind with no proper identification process, could not visibly see Plaintiff and without knowledge of who was sitting in the vehicle, only assuming Plaintiff was in the vehicle. At this time, Plaintiff's hands [were] out the window, another officer J.J. Shupp pulls up while Officer Guthrie is putting one hand cuff on Plaintiff, J.J. Shupp makes the positive identification on Plaintiff while looking into the window while Officer Guthrie is holding Plaintiff's hands out the window with one cuff on.
>
> Plaintiff is arrested and walked with Officer Guthrie to the front of his patrol car. At this time Officer J.J. Shupp says "he's got stuff." **While Plaintiff is standing with Officer Guthrie, J.J. Shupp is back and forth to Plaintiff's vehicle repeatedly shining and looking into the vehicle by J.J. Shupp standing from the road while vehicle is parked in the grass alongside the road on the property. Officer J.J. Shupp after the extended back and forth to Plaintiff's vehicle. There was conversation between both officers who would search, they decide Shupp would search based off the sight of what J.J. Shupp calls heroin syringes without residue. J.J. Shupp opens the front driver door and Plaintiff says to J.J. Shupp "why are you searching my vehicle you can't search my vehicle you need a warrant." J.J. Shupp replies because you have heroin syringes in your seat (states nothing about a baggy). Then continued the search of the vehicle all compartments and trunk. J.J. Shupp emptied the contents of the backpack on the trunk of Plaintiff's vehicle in case was Narcan and clean syringes that the anonymous program Health Brigades supplied Plaintiff with he is legally enrolled in. At this time Plaintiff's mother Annette Marie Kearns came out of the house and stood next to the vehicle and asked

---

³ *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

Plaintiff "Allen are those your syringes?" Plaintiff answered yes. At this time, Plaintiff was put into the patrol car and watched Officer J.J. Shupp continue the search, then officer Guthrie joins the search assisting with his flashlight, on the private property and combing through the yard on the property without a warrant. Searching for evidence that a crime was committed. The items seized were taken from their private places and put out in public view in this case Plaintiff's mother witnessed. These two officer's violated my 4th Amendment[4] right to my privacy without probable cause, are any law broken this was not a traffic stop, Officer Guthrie initiated this interaction by abuse of authority and infringing himself on Plaintiff while in his vehicle while on private property without positively identifying Plaintiff, forcing Plaintiff to stick his hands out the window stopping Plaintiff from being secure in the privacy of his car and on his property, without any means of a[n] identification process, at this time Plaintiff was securing all what the anonymous program supplied him with was moving items from console to his backpack when Officer Guthrie presented his hand on his firearm on his side in an alarming way, yelling Allen Keeton stick your hands out the window your under arrest. Plaintiff could see only though the side view mirror looking back because Officer Guthrie was from coming up from behind the vehicle. Guthrie has never encountered Plaintiff and this officer has never been to Plaintiff's address, but only on a request call from J.J. Shupp to Officer Guthrie to dispatch to the address. J.J. Shupp was not at the address when Guthrie got to the address.

The precursor to this encounter started with J.J. Shupp driving down the road approximately one mile from address and got behind Plaintiff's vehicle ran a routine license plate check, at this time J.J. Shupp testified that the car made a left-hand turn, and the vehicle made no traffic infractions there was no need to follow. Shupp testified that there was a delay on the information on vehicle to come back and when it did it said the owner of the car had active warrants. Shupp testified he only knew that there was one occupant in the vehicle, the driver, and could not see who was driving. This is when Shupp dispatches the assistance of Officer Guthrie to Plaintiff's address, Shupp drove around the neighborhood looking for the vehicle while Guthrie pulled up to the address first. Then all the above matters occurred. This encounter is two-fold and dove tails into one another from these two officers.

. . .

While Plaintiff is standing with Officer Guthrie while Shupp searches the vehicle on the property Guthrie is asking Plaintiff repeatedly for his SSN, Plaintiff tells Guthrie he not completely sure he might have the last numbers mixed up that

---

[4] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV.

he was not going to try, Officer Guthrie is persisting for Plaintiff to try, Plaintiff leans forward right into Guthrie's body cam and states this officer will not stop asking me to give him a SSN, so he can put more charges on me for ID theft. After a few moments after the harassment Guthrie says just try. Plaintiff then tries, immediately Guthrie comes back and says now I'm charging you with ID theft. J.J. Shupp overhears this statement and comes over to Guthrie and states "hey you can't get him for that, but I can for what he said when [he] got out the vehicle. Plaintiff immediately states all I said is I have a brother named Allen, never stated I was anyone else." Plaintiff is now on way with J.J. Shupp to Chesterfield County Jail were Shupp swears in on a criminal complaint on Plaintiff for 2 counts possession schedule I/II, paraphernalia, ID theft. Magistrate ask Shupp what was the probable cause to search Mr. Keeton's vehicle, Officer J.J. Shupp states he seen a baggy with brown heroin like substance and a syringe without residue in Plaintiff's driver seat. Plaintiff was in court a few months later at preliminary hearing and tells his attorney he wants to move forward with the pre-lim, and wants to show the judge the body cam footage for the incident with the Guthrie. Attorney then goes and speaks to Commonwealth and the charge ID theft was dismissed. Plaintiff feels that this Honorable Court should be aware of these facts highlighting the behaviors of these two officers.

Plaintiff's attorney proved there was no baggy in the Plaintiff's seat only a syringe without residue was in plain view and he needed a warrant to search. Plaintiff believes that this was a malicious intent and ill will to cover the threshold for probable cause to search the vehicle on private property, Officer Shupp swore under oath to magistrate that there was a baggy he seen in plain view. Plaintiff believes this was calculated and has caused Plaintiff a lot of damages punitively, Plaintiff's belief is that there should be compensatory damages awarded to persuade these officers to uphold the Constitution, and the oath they swore to, and not to put the Commonwealth at risk of any future civil matters.

(ECF No. 37-1, at 1–4 (emphasis added).)

Keeton relies upon the bolded language above to make the following claims.

| | |
|---|---|
| Claim One | Keeton contends that Officer Shupp's actions in the section bolded above "violated my 4th Amendment right to my privacy without probable cause." (ECF No. 37-1, at 2.) Specifically, Keeton contends that Officer Shupp violated Keeton's Fourth Amendment rights when he shined a flashlight into Keeton's car and then performed a warrantless search of Keeton's car. |
| Claim Two | Officer Shupp violated Keeton's Eighth Amendment[5] rights when stated he saw a baggy containing heroin in plain view and subsequently charged Keeton with possession of heroin. (ECF No. 37-1, at 4.) |

---

[5] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

## II. Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility of informing the Court of the basis for the motion and identifying the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c), (e) (1986)).

In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A mere "*scintilla* of evidence," however, will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th

Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of his Motion for Summary Judgment, Officer Shupp submitted his own affidavit (ECF No. 42-1), and the body worn camera footage of Officer Shupp ("Shupp BWC"), and the body worn camera footage of Officer Guthrie ("Guthrie BWC"), and the transcript of the motion to dismiss hearing conducted in Keeton's criminal case in the Circuit Court for Chesterfield County (ECF No. 42-3). Keeton responded to the Motion for Summary Judgment by submitting a "RESPONSE: TO MOTION FOR SUMMARY JUDGMENT." (ECF No. 48.) Keeton attempts to transform this Response into admissible evidence by swearing to its contents under penalty of perjury. (ECF No. 48, at 8.) This he cannot do. The Court has repeatedly informed Keeton:

> [T]he Court will not consider as evidence in opposition to any motion for summary judgment a memorandum of law and facts that is sworn to under penalty of perjury. Rather, any verified allegations must be set forth in a separate document titled "Affidavit" or "Sworn Statement," and reflect that the sworn statements of fact are made on personal knowledge and the affiant is competent to testify on the matters stated therein. *See* Fed. R. Civ. P. 56(c)(4).

(ECF No. 13, at 2; ECF No. 16, at 2.)

### III. Summary of Relevant Facts

#### A. Search and Initial Arrest

On October 10, 2021, John Shupp was a police officer employed by Chesterfield County, Virginia. (ECF No. 42-1 ¶ 2.) Around 1:15 a.m. on that date, Officer Shupp was driving when he performed a registration check on a red Subaru that turned off into a neighborhood. (*Id.* ¶ 3.) The DMV check came back showing Allen Keeton was the registered owner and his license was revoked. (*Id.* ¶ 4.) Keeton also had outstanding arrest warrants in Henrico County for stolen

property and for failing to appear in court, and multiple capiases for his arrest in Chesterfield County. (*Id.*) The DMV check also showed Keeton's driver's license photo. (*Id.*)

Officer Shupp called for assistance and proceeded to look for the red Subaru. (*Id.* ¶ 5) Officer Guthrie responded to Officer's Shupp's request for assistance. (*Id.*) Officers Shupp and Guthrie

> identified that the home address of the vehicle's registered owner, [Keeton], was nearby so [they] responded to that street. Driving down the public street, [they] located the vehicle. It was parked on the same street as [Keeton's] home address; two wheels were on the grass and two wheels were on the street. The vehicle was occupied by one person, [Keeton].
> Officer Guthrie approached [Keeton's] vehicle first and asked if he was Mr. Keeton, which Plaintiff confirmed. Officer Guthrie asked him to step out of the car. [Officer Shupp] was just behind Officer Guthrie to assist with detaining Plaintiff. [Officers Guthrie and Shupp] were standing on the road just outside the vehicle. [Officer Shupp] looked at Plaintiff and confirmed that he matched the driver's license photo for [the] registered owner of the vehicle.

(*Id.* ¶¶ 5, 6 (paragraph numbers omitted).) Officers Guthrie and Shupp used flashlights to illuminate Mr. Keeton and the inside of his car as they asked him to step out of the car and detained him. (*Id.* ¶ 7.)

Officer Shupp handcuffed Mr. Keeton and explained to him that he was just being detained for now. (*Id.* ¶ 8.) Officer Shupp had seen in Mr. Keeton's car "a blue bottle cap, an open syringe with no cap, and a small baggie with a tan brown powdery substance," which, based on his training, he believed to be heroin.[6] (*Id.* ¶¶ 8, 9.) Officer Shupp said to Officer Guthrie, "Also, he's got stuff" and nodded his head toward the car. (*Id.* ¶ 8) Officer Guthrie said, "Yep." (*Id.*)

---

[6] Officer Shupp "knew that it was common for users of heroin and other intravenous drugs to use a bottle cap or metal spoon to contain the drugs before drawing them up into the syringe." (ECF No. 42-1 ¶ 9.)

Officers Shupp and Guthrie brought Mr. Keeton back to Officer Guthrie's vehicle. (*Id.* ¶ 10.) Officers Shupp and Guthrie discussed who would perform the search of Mr. Keeton's vehicle. (*Id.* ¶ 11.) Both officers had seen the syringe, baggie, and bottle cap. (*Id.*) Ultimately, it was agreed that Officer Shupp would perform the search. (*Id.*) Based on his training, Officer Shupp believed Mr. Keeton was in possession of heroin, which is a felony, thus providing probable cause to search the vehicle, without first obtaining a warrant. (*Id.* ¶¶ 9, 12.)

> Officer Shupp began the search of
>
> Began the vehicle search by opening the driver's side door and searching the driver's side door compartment. Then [he] found a syringe on the edge of the front driver's seat. Then [he] moved [his] right hand forward and toward the car's center console near the gear shift and picked up the baggie with a tan powdery substance that [he] had first seen when Plaintiff exited the car. [He] then placed the baggie on the driver's seat, and it rolled slightly backwards into the seat, stopping in a crease near the orange syringe top.

(*Id.* ¶ 13.) Officer Shupp then paused the search to return to his police car to retrieve evidence bags. (*Id.* ¶ 14.) Officer Shupp then returned to Mr. Keeton's car and placed the items he found in evidence bags, to be sent to the state lab for testing. (*Id.*)

After the conclusion of the search, Officer Shupp transported Mr. Keeton to the Chesterfield County Jail. (*Id.* ¶ 15.) Officer Shupp began the "paperwork to process the existing arrest warrants that were the initial reason for the stop and to request additional arrest warrants for the evidence [he] had obtained during the vehicle search." (*Id.*) Additionally, Officer Shupp served Mr. Keeton with the five outstanding warrants from Henrico and Chesterfield Counties. (*Id.* ¶ 16.) Around 2:50 a.m., Officer Shupp took Mr. Keeton before the magistrate,

> provided the warrants already served, and told magistrate [he] was also seeking additional warrants. [He] was sworn in and testified to magistrate that Plaintiff's "vehicle was parked out front next door to his house. As Plaintiff stepped out of vehicle, [he] observed a small plastic baggie with a tan brown powdery substance consistent with heroin as well as a syringe that had recently been used." [He] testified that [he] then conducted a probable cause search of the vehicle. [He] told

8

> the magistrate [he] noted an additional plastic baggie containing a white substance and folded up $1 with white rock powdery substance folded up in it, which [he] knew through [his] training and experience was consistent with what cocaine looked like and how it can be used or stored. [He] stated that multiple syringes were found throughout [the] vehicle.

(*Id.*) The magistrate issued the warrants Officer Shupp requested. (*Id.* ¶ 17.)

Officer Shupp then explained to Mr. Keeton that the magistrate had found probable cause to charge Mr. Keeton "with possession of a Schedule I/II drug for the brown substance and a second possession of a Schedule I/II drug for the white substances." (*Id.*) Mr. Keeton "responded that the 'white will come back as cocaine but the other's not.'" Officer "Shupp said, 'You said it [the brown substance] was some kind of fentanyl?' Plaintiff responded, 'Bonita.'" (*Id.* ¶ 18.)

"The state Department of Forensic Science analyzed the evidence and determined that the plastic bag containing the brown substance was a baggie containing Fentanyl, a Schedule II drug, and the white substance was cocaine." (*Id.* ¶ 19.)

### B. **Criminal Proceedings**

Mr. Keeton is defense counsel for the criminal charges filed a motion to suppress the search of Mr. Keeton's vehicle. (*Id.* ¶ 20.) A hearing on the motion to suppress was conducted in July of 2022, in the Circuit Court of Chesterfield County. (*Id.* ¶ 21.) At the hearing on the motion to suppress, there was a lot of confusion over when and where Officer Shupp first saw the baggie of fentanyl in plain view. (*Id.* ¶ 22.) Officer Shupp had prepped for the hearing by using screenshots from his body worn camera ("BWC") footage. (*Id.*) Officer Shupp did not review the whole footage from his BWC, but merely the screenshots that Commonwealth's Attorney planned to use at the hearing. (*Id.*)

9

On cross-examination, Officer Shupp testified that he observed a syringe with a needle cap and a baggie with a brown powdery substance consistent with heroin sitting on the right portion of the seat, in an area under Mr. Keeton's right leg. (*Id.* ¶ 23.)

> Plaintiff's defense attorney argued that there was no baggie sitting on the seat until [Officer Shupp] placed it there and played BWC footage showing [Officer Shupp] place the baggie on the seat. By not reviewing the BWC footage prior to the hearing, [Officer Shupp] was unable to clarify [his] testimony or explain where [he] had retrieved the baggie during [his] search.

(*Id.*) After the hearing, Officer Shupp reviewed his BWC footage and realized that his testimony at the hearing was incorrect, although at the time of the hearing he believe it was correct. (*Id.* ¶ 24.) Officer Shupp admits that it is clear from his

> BWC footage that before the baggie was on the right portion of the driver's seat, [he] reached across the seat to the center console near the gear shift area and the parking brake and just to the right of the driver's seat and retrieved the baggie from where [he] had first seen it in plain view. [He] placed it on the right portion of the seat and then returned to [his] vehicle to grab evidence bags to bag up the evidence from the vehicle search.
> The first time [he] saw the baggie with the brown powdery substance was as Plaintiff got out of his car when it was on the center console. Although it is correct that [he] did see it on the right side of the driver's seat, that was only after [he] had retrieved it from the center console and placed it on the seat where [he] was collecting items during my search.

(*Id.* ¶¶ 25, 26 (paragraph numbers omitted).)

Mr. Keeton's charges stemming from the search of his vehicle were dropped because of Officer Shupp's testimony at the motion to suppress hearing. (*Id.* ¶ 26.) Nevertheless, Mr. Keeton remained in jail because of the outstanding warrant on which he was originally detained. (*Id.*) The fact that Mr. Keeton remains in jail is unrelated to the search performed by Officer Shupp or the subsequent charges. (*Id.*)

10

## IV. Analysis

### A. Fourth Amendment

"[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603 (1980). Therefore, it is equally apparent that a valid arrest warrant, authorizes an officer to enter the curtilage of an individual's property where there is reason to believe that the subject of the warrant may be found there. *See, e.g., United States v. Green*, 106 F.4th 368, 378 (4th Cir. 2024) (concluding that arrest warrant authorized police to enter property and arrest defendant who they observed in the yard (citing *Payton*, 445 U.S. at 602–03; *United States v. Hill*, 649 F.3d 258, 262-65 (4th Cir. 2011))); *United States v. Cozart*, No. 3:19-CR-123-RLJ-HBG, 2022 WL 1521511, at *10 (E.D. Tenn. Jan. 24, 2022), *report and recommendation adopted*, No. 3:19-CR-123, 2022 WL 1117103 (E.D. Tenn. Apr. 14, 2022). Here, Officer Shupp had access to active warrants for the arrest of Mr. Keeton, and he had every reason to believe Mr. Keeton could be found in the vehicle registered to Mr. Keeton and parked in the curtilage outside Mr. Keeton's home. Further, Keeton had said, "yes" to Officer Guthrie, when asked if he was Mr. Keeton. Therefore, there was no Fourth Amendment violation when Officer Shupp approached Mr. Keeton's vehicle.

Next, Mr. Keeton suggests that Officer Shupp violated his right to be free from an unreasonable search when he shined his flashlight into Mr. Keeton's car. The Supreme Court, however, has held that shining a flashlight into a vehicle is not a search for Fourth Amendment purposes. *Texas v. Brown*, 460 U.S. 730, 739–40 (1983) (citations omitted) (concluding police officer's "action in shining his flashlight to illuminate the interior of [defendant's] car trenched

upon no right secured to the latter by the Fourth Amendment. . . . the use of artificial means to illuminate a darkened area simply does not constitute a search, and thus triggers no Fourth Amendment protection."). Therefore, this action did not give rise to a Fourth Amendment violation.

Next, is Mr. Keeton's central complaint, the warrantless search of his car by Officer Shupp. "Under the Fourth Amendment, law enforcement officers are generally required to obtain a warrant before conducting a search." *United States v. Caldwell*, 7 F.4th 191, 200 (4th Cir. 2021) (citing *Maryland v. Dyson*, 527 U.S. 465, 466 (1999)). "Evidence of illegal activity discovered in plain view can serve as the basis for probable cause to conduct a more extensive search." *United States v. Mitchell*, No. 3:23CR39, 2023 WL 4765582, at *4 (E.D. Va. July 26, 2023) (citing *United States v. Hall*, 397 F. App'x 860, 862 (4th Cir. 2010)). The automobile exception to warrant requirement allows police to conduct a warrantless search of a readily mobile vehicle if they have probable cause to do so. *Caldwell*, 7 F.4th at 200 (citing *Dyson*, 527 F.3d at 467). "Probable cause 'exist[s] where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found.'" *Id.* (alteration in original) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)).

Probable cause existed here. Officer Shupp had observed in plain view, a syringe, a bottle cap, and a small bag containing a brown powdery substance. Given Officer Shupp's training, these items supported the conclusion that Mr. Keeton was in possession of heroin and probable cause existed to believe his vehicle contained evidence related to that crime. Therefore, Officer Shupp's subsequent search of the vehicle did not violate the Fourth Amendment. Accordingly, Claim One will be DISMISSED.

## B. Eighth Amendment

In Claim Two, Keeton contends that Officer Shupp violated his rights under the Eighth Amendment when he falsely stated he saw the baggy containing heroin in plain view and subsequently had Keeton charged with possession of heroin. The Eighth Amendment, however does not apply here. The Eighth Amendment's prohibition against the infliction of cruel and unusual punish does not apply until after an individual is convicted of a crime. *See Ingraham v. Wright*, 430 U.S. 651, 669–700 (1977). The Supreme Court explained:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions. . . . As these cases demonstrate, the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.

*Id.* at 671 n. 40 (citations omitted). Accordingly, because the Eighth Amendment does not apply, Claim Two will be DISMISSED.

## V. Conclusion

The Motion for Summary Judgment (ECF No. 41) will be GRANTED. Keeton's claims and the action will be DISMISSED.

An appropriate Final Order will accompany this Memorandum Opinion.

Date: 05/13/2025
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge

13